UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| CHUN CHEE SENG, | |
| Plaintiff, | |
| v. | |
| AMERICANA INVESTMENTS, LLC (a Colorado limited liability company), AMERICANA INVESTMENTS, LLC (a Virginia limited liability company), ANTONIO LANNI, LUIGI MURO, MARGARET V. ANDERSON-CLARKE, ANDERSON-CLARKE LAW, ALAN R. JAHDE, BRIAN D. WEST, THE WEST LAW GROUP P.C., NATHAN BREGMAN, MARK BROWN, TRI-GLOBE CAPITAL LIMITED, SAYSE CHATTERPAUL, ANAND CHATTERPAUL, and JOHN DOE 1, | Civil Action No.: 1:14–cv–01407–GBL–TCB |
| Defendants. | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

For many years, Defendants have been running an international investment scam that targets investors all around the world, by claiming to offer large rates of return through a credit "leasing" process. This investment scam has defrauded at least 6 known investors of more than $6 million. Plaintiff Chun Chee Seng brings this action to recover the $1 million that he lost to Defendants' investment scam, along with additional damages, attorneys fees, and costs.

Chun v. Americana et al.

# Table of Contents

PARTIES ............................................................................................................... 1

JURISDICTION AND VENUE .......................................................................... 3

FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ............................ 4

    The Fraudulent Enterprise ............................................................................ 4

    Predicate Acts ................................................................................................. 7

    Americana CO ................................................................................................ 8

    Americana VA .............................................................................................. 10

    The Enterprise Dupes Investors ................................................................ 11

    Anderson-Clarke Facilitates the Fraud Acting as an Escrow Agent ............. 17

    Breaches of the Escrow Agreement and IDCA ....................................... 22

    The Fraudulent Transfers .......................................................................... 23

    Chun's Futile Pursuit of the Return of the Initial Investment ............. 25

    Anderson-Clarke's Further Deceptive Acts:  The Alleged Remittance of the Initial Investment to Chun ............................................................. 27

    Second Attempt at Settlement with Americana CO .............................. 30

    The Colorado Lawsuit ................................................................................ 32

    Pattern of Criminal Activity Against Other Victims ............................. 33

        Douglas Neil ............................................................................................ 33

        Thomas Smith .......................................................................................... 35

        David Gonzalez-Escudero ..................................................................... 36

1st Count: RICO ................................................................................................ 37

2nd Count: Conversion ..................................................................................... 41

3rd Count: Conspiracy ...................................................................................... 42

4th Count: Fraud ............................................................................................... 45

5th Count: Constructive Fraud ....................................................................... 46

6th Count: Fraudulent Transfer Under Virginia Law ................................. 48

7th Count: Voluntary Conveyance under Virginia Law ............................. 49

8th Count: Piercing the Corporate Veil Under Virginia Law .................... 50

9th Count: Breach of Contract ........................................................................ 52

10th Count: Negligence ..................................................................................... 53

11th Count: Negligent Misrepresentation ..................................................... 54

12th Count: Breach of Fiduciary Duties ......................................................... 55

Chun v. Americana et al.

13th Count: Unjust Enrichment..................................................................................................... 57

PLAINTIFF DEMANDS A TRIAL BY JURY........................................................................ 59

Chun v. Americana et al.

# PARTIES

1.      Plaintiff Chun Chee Seng ("Chun") is a citizen of Malaysia, who presently resides at the following address: 17 Jalan Bukit Serdang, Seri Kembangan, Selangor, Malaysia 43300.

2.      Defendant Americana Investments, LLC ("Americana CO") is a Colorado limited liability company (now delinquent with the Colorado Secretary of State) previously registering its principal place of business at: 5165 Hidden Rocks Road, Colorado Springs, CO 80908.

3.      Defendant Americana Investments, LLC ("Americana VA") is a Virginia limited liability company (now canceled with the Virginia Secretary of State) previously registering its principal place of business at: 8000 Towers Crescent Drive, Suite 600, Vienna Virginia.  Americana VA is a citizen of the Commonwealth of Virginia for the purposes of jurisdiction.

4.      Defendant Alan R. Jahde ("Jahde") is a citizen of Colorado and an attorney licensed in Colorado, with a principal business address at: 2100 West Littleton Boulevard, Suite 300, Littleton, CO 80120.

5.      Defendant Margaret V. Anderson-Clarke ("Anderson-Clarke") is a citizen of Canada, a notary public, barrister, and a solicitor licensed in Ontario, with a principal business address at: 39 Richvalley Crescent, Richmond Hill, Ontario, L4E 4C9, Canada.

6.      Defendant Anderson-Clarke Law ("Anderson-Clarke Law") is an Ontario business in the practice of law, with a principal place of business at: 39 Richvalley Crescent, Richmond Hill, Ontario, L4E 4C9, Canada.

1

Chun v. Americana et al.

7.      Defendant Antonio Lanni ("Lanni") is a citizen of Canada with a principal address of: 6060 Rue Jean Talon E. Street, Leonard, Quebec, H1S3C8. At all times relevant to this Complaint, Lanni claimed to be the President, owner, control person, and representative of Americana CO and Americana VA.

8.      Defendant Luigi Muro ("Muro") is a citizen of Canada with a principal address of: 7377 Lisieux, Montreal, Quebec, H1S2G7. At all times relevant to this Complaint, Muro claimed to be the CEO, owner, control person, and representative of Americana CO and Americana VA.

9.      Defendant Brian D. West ("West") is a citizen of Virginia and an attorney licensed in Virginia, with a principal business address at: 8500 Leesburg Pike, Suite 407, Vienna, VA 22182. West is also a transferee defendant.

10.      Defendant The West Law Group, P.C. ("West Law") is a Virginia professional corporation, with a principal place of business at: 8500 Leesburg Pike, Suite 407, Vienna, VA 22182.  West Law is also a transferee defendant.

11.      Defendant Doctor Nathan Bregman ("Bregman") is an individual with an unknown address.

12.      Defendant Mark Brown ("Brown") is an individual with an unknown address.

13.      Defendant Tri-Globe Capital Limited ("Tri-Globe Capital Limited") is a transferee defendant, with an unknown principal address.

14.      Defendant Sayse Chatterpaul ("Sayse Chatterpaul") is a transferee defendant, with an unknown principal address.

2

Chun v. Americana et al.

15.     Defendant Anand Chatterpaul ("Anand Chatterpaul") is a transferee defendant with an unknown principal address.

16.     Defendant John Doe 1 ("John Doe 1") is a transferee defendant with an unknown principal address.

## JURISDICTION AND VENUE

17.     This action arises under the laws of the United States, in particular, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1964, and 18 U.S.C. § 1961 et seq.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as those claims are so related to the federal claims in this action in that they form part of the same case or controversy.

19.     This Court has further jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because: (a) there is diversity of citizenship between the plaintiff and defendants; and (b) the amount in controversy exceeds $1 million, exclusive of interest and costs.

20.     This Court has jurisdiction over the parties pursuant to 18 U.S.C. § 1965(a) and 1965(d) (RICO Nationwide Service of Process), Fed. R. Civ. P. 4(k)(2), and VA Code Ann. § 8.01-328.1.

21.     Defendants Americana VA, West and West Law reside in this district.  All other defendants maintain minimum contacts with this district and the United States generally.

3

Chun v. Americana et al.

22.     Venue is proper in this district pursuant to 18 U.S.C. § 1965(a) and 1965(d) and U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this action occurred in this district, defendants transact business in this district, the defendants have an agent in this district, and defendants are subject to personal jurisdiction in this district. Furthermore, venue is proper in this Federal District because Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Jahde, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 are deemed to reside in this Federal District pursuant to 28 U.S.C. § 1391(c).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### The Fraudulent Enterprise

23.     This action arises from a scheme to defraud Chun and other victims through lies and deceit.  Through fraud, misrepresentation, and false promises of a return on investment, Defendants' cause their victims including Chun to wire them funds under the guise of making an investment.  Once the funds are wired, they are quickly misappropriated and dispersed throughout the fraudulent enterprise. No investment is ever made.  Once the victims suspect fraud, Defendants then repeat the same pattern of fraud, misrepresentation, and false promises to forestall and delay victims from pursuing any recovery of his money.

24.     Through this scheme, Defendants stole $1 million from Chun.

25.     The Defendants, Americana CO, Americana VA, Jahde, Anderson-Clarke, Anderson-Clarke Law, Lanni, Muro, West, West Law, Bregman, Brown, Tri-Globe

4

Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, (collectively, the "Enterprise") are members of the Enterprise who have agreed among themselves to induce, and who did induce, Chun to transfer one million dollars to the Enterprise.  The Enterprise then agreed among themselves to use lies and deceit to delay, defraud, and deter Chun's attempts to recover his funds.

26.     First, the Enterprise misrepresented that Chun's one million dollars would be used to "lease" a larger "credit instrument," which would, according to the Enterprise, generate returns of roughly 36 million dollars for Chun on a monthly basis. To induce Chun to "invest" the Enterprise misrepresented that: 1) this transaction would be "risk free or maximally up to level 2 in risk profiling"; 2) that the transaction would abide by all local government authorities and regulations; 3) that Americana CO guaranteed the protection of Chun's money; 4) that Americana CO ensured that it would return Chun's money.  After Chun transferred the one million dollars to the Enterprise, the Enterprise merely caused the money to be wire transferred to the transferee defendants as detailed later in this Complaint.

27.     Second, the Enterprise used lies and deceit to delay Chun's recovery.  For over two years the Enterprise feigned a willingness to pay Chun back and lied to Chun about the whereabouts of his money. This involved the regular use of the lawyer West and West Law (who actually received the majority of Chun's Money, in the form of a fraudulent wire transfer in the amount of $782,560.00). With no intention of ever paying, West and the rest of the Enterprise presented Chun with written assurances that payment would be forthcoming, settlement proposals, and signed settlement

Chun v. Americana et al.

agreements. The Enterprise then misrepresented that funds were on route to Chun's

account, even providing fake wire transfer confirmation numbers. The Enterprise also

made numerous misrepresentations about the use and whereabouts of Chun's money.

28.     In fact, the Enterprise never had any intention to "lease" a "credit

instrument" with Chun's money.  Nor did the Enterprise ever intend to pay Chun back.

Rather, the only goal of the Enterprise was to convert Chun's money, and delay his

recovery for as long as possible.

29.     Chun finally brought suit in the Federal Court for the District of Colorado

against some of the members of the Enterprise (Americana CO, Anderson-Clarke,

Anderson-Clarke Law, West, and West Law ).  At that time Chun did not yet realize the

scope of the fraud committed on him, nor did he know that West and West Law were

actual recipients of the vast majority of his money.  In the Colorado proceeding, Chun

received a Judgment against Americana CO for 6 million dollars plus interest and costs.

However, various claims against West, West Law, Anderson-Clarke, and Anderson-

Clarke Law were dismissed without prejudice, due to the court's lack of personal

jurisdiction over those parties.

30.     After losing his money, Chun learned to his dismay that Americana CO

never had any non-fraudulent business activities and never had any legitimate business

purpose.  Americana CO has no money, no assets, and no business operations.

Americana CO is merely an instrumentality for the Enterprise to conduct their fraud

against Chun and others.

Chun v. Americana et al.

31.     Now, armed with additional facts regarding the fraudulent conduct of the Enterprise, Chun alleges that the Enterprise conducted or participated, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity, and/or conspired to do so, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and brings fraudulent transfer and other claims against the Enterprise and its participants, all as further detailed below.

### Predicate Acts

32.     Sometime prior to August 5, 2010, the Enterprise, using email, phones, the wires and other instrumentalities of interstate commerce, conspired and discussed formation of a fraudulent enterprise for the purposes of defrauding, stealing, and converting funds from investors such as Chun. This included, but was not limited to, discussing and planning to take the following acts in furtherance of the conspiracy:

a)   formation of limited liability companies in Colorado, Virginia, and other states, for the sole purpose of defrauding victims;

b)   the contacting of and use of attorneys and law firms (both within and outside the United States) as alleged "escrow agents" for the purposes of receiving and fraudulently transferring victim's funds;

c)   the drafting of agreements which promised incredibly high rates of returns allegedly derived from the "leasing" of a "credit instrument";

d)    the use of the aforementioned agreements for luring victims to "invest" their money;

e)   the opening of bank accounts, for the benefit of the Enterprise at banks in Canada, the United States, and other countries for the purposes of receiving and fraudulently transferring victim's funds;

Chun v. Americana et al.

    f)   fraudulently transferring victims funds from the attorney "escrow agent" accounts to the Enterprise accounts;

    g)   the use of emails and text messages to misrepresent that victims' funds were in transit to the victims' accounts, and the sending of phony wire transfer confirmation numbers via email; and

    h)   the use of lawyers such as Anderson-Clarke and West for the purpose of delaying the victims' recovery by way of written assurances that payment would be forthcoming, settlement proposals, and signed settlement agreements.

## Americana CO

33.    On information and belief, on August 5, 2010, the Enterprise formed Americana CO by having Jahde file articles of organization for Americana CO (the "Americana CO Articles") with the Colorado Secretary of State.

34.    When Jahde filed the Americana CO Articles, Jahde represented that that the "true name and mailing address of the person forming the limited liability company" was Jahde, who had an address of: 2100 West Littleton Boulevard, Suite 300, Littleton, CO 80120.

35.    When Jahde filed the Americana CO Articles, Jahde made the following misrepresentations, under the penalties of perjury:

    a)   that Americana CO was "managed by one or more managers"; and

    b)   that Americana CO had at least one member.

36.    Jahde later stated in an email that he did not know who the members of Americana CO were.

Chun v. Americana et al.

37.     When Jahde misrepresented that Americana CO was "managed by one or more managers" Jahde knew that that Americana CO had not actually appointed a Manager.  Nor did Americana CO ever appoint a manager after Jahde made this misrepresentation.

38.     When Jahde misrepresented that Americana CO "had at least one member" Jahde knew that that Americana CO did not actually have any members.  Nor did Americana CO ever admit a member after Jahde made this misrepresentation.

39.     Americana CO conducted its fraudulent and illegal activities from the law office of Jahde at: 2100 West Littleton Boulevard, Suite 300, Littleton, CO 80120.

40.     Americana CO, was "formed" by the Enterprise for the sole purpose of defrauding individuals such as Chun.

41.     Americana CO had no legitimate or lawful business purpose.

42.     Americana CO conducted no legitimate or legal business.

43.     On information and belief, other than filing the Americana CO Articles, Americana CO did not follow any corporate formalities, and never formally adopted an Operating Agreement.

44.     The Enterprise, acting in concert, used Americana CO for the sole purposes of defrauding, converting, and stealing the money of individuals both within and outside of the United States.

45.     The Enterprise' forming and operation of Americana CO itself constituted a fraudulent enterprise pursuant to 18 U.S.C. 1961 *et al*.

Chun v. Americana et al.

46.     Jahde served as Americana CO's initial registered agent from August 5, 2010, until January 3, 2011, when Jahde filed a form with the Colorado Secretary of State changing Americana's registered agent to: The Corporation Company, having an address of 1675 Broadway, Suite 1200, Denver, CO 80202

47.     On January 10, 2012, Jahde filed an annual report with the Colorado Secretary of State, stating that Americana's principal place of business had changed from Jahde's law office at, 2100 West Littleton Boulevard, Suite 300, Littleton, CO 80120, to 5165 Hidden Rocks Road, Colorado Springs, CO 80908.

**Americana VA**

48.     On January 4, 2011, the Enterprise agreed to and conspired to form, and did form, Americana VA by filing documents with the Virginia Secretary of State.

49.     On information and belief, Americana VA was formed by the Enterprise for the sole purpose of defrauding individuals such as Chun.

50.     At all times relevant to this Complaint, Americana VA conducted its fraudulent and illegal activities from the law office of West and West Law at: 8000 Towers Crescent Drive, Suite 600, Vienna, Virginia 22182.

51.     Americana VA had no legitimate or lawful business purpose.

52.     Americana VA conducted no legitimate or non-fraudulent business.

53.     On information and belief, Americana VA did not follow any corporate formalities and never adopted an Operating Agreement.

54.     On information and belief, Americana VA never actually appointed any managers or members to manage Americana VA.

10

Chun v. Americana et al.

55.     The Enterprise acting in concert, used Americana VA for the sole purposes of defrauding, converting, and stealing the money of individuals both within and outside of the United States.

56.     The Enterprise's forming and operation of Americana VA itself constituted a fraudulent enterprise pursuant to 18 U.S.C. 1961 *et al*.

57.     At all times relevant to this Complaint, West served as Americana VA's registered agent.

58.     Upon information and belief, the Enterprise also formed the following entities by filing formation documents with the Virginia Secretary of State: Americana Holdings, LLC, D & L Capital Group, LLC, and Dreamworks/Americana Investments, LLC.

### The Enterprise Dupes Investors

59.     Sometime in late 2010, the Enterprise, used "word of mouth," email, phone calls, and other means to advertise investment opportunities to both U.S. citizens and foreign nationals.

60.     The Enterprise initially reached out to Chun to through Bregman, who represented himself as a "Trade Platform Facilitator" for Americana CO.

61.     Sometime in January 2011, the Enterprise, through Bregman,  provided the initial description of the investment scheme that the Enterprise previously offered to other individuals.

62.     The Enterprise, through Bregman, explained the Enterprise's "credit instrument" leasing process by analogizing it to writing a post-dated check.

11

Chun v. Americana et al.

63.     Sometime in January 2011, Bregman introduced Chun to Lanni.  Bregman and Lanni, individually and collectively, discussed the investment opportunities offered by Lanni and Muro through Americana CO with Chun. The parties mostly conducted these discussions via telephone, email, Skype and cellphone text messaging (SMS).

64.     The Enterprise, through Bregman, Lanni and Muro misrepresented to Chun that they could "lease" Chun's funds in the market by creating a "credit instrument" which would then be resold by the end of the week "at a much higher rate."  When Bregman, Lanni, and Muro made these misrepresentations to Chun they knew that no such "leasing" was engaged in by the Enterprise.  Furthermore, at the time that the Enterprise, though Bregman, Lanni, and Muro, made these misrepresentations, they had no intention of ever using Chun's funds in this fashion.

65.     On information and belief, Lanni and Muro, have advertised "investment opportunities" in a similar manner to many other individuals in addition to Chun.  This scam has been in continuous operation for at least the past 4 years, if not longer.

66.     On February 2, 2011, the Enterprise, through Lanni and Bregman, provided Chun with a copy of the Enterprise's Investment Development Cooperation Agreement (the "IDCA").  The IDCA memorialized the purported "investment opportunity" offered by the Enterprise.  A copy of the IDCA is attached hereto and incorporated herein as Exhibit A.

67.     When Lanni and Bregman presented the IDCA, Bregman represented that he was Chun's "conduit and liaison" in his relationship with Americana CO and the

Chun v. Americana et al.

rest of the Enterprise. A copy of Bregman's email is attached hereto and incorporated herein as Exhibit B.

68.     Under the transaction proposed by the Enterprise and memorialized in the IDCA, Chun would tender $1,000,000 (the "Initial Investment") to Americana CO for the purposes of investment.

69.     On February 2, 2011, the Enterprise, and specifically Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that they would use the Initial Investment "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV"), which consist of various international financial institution (as part of the Top 25 European Prime Bank), investment bank, private and wealth management institution." [sic]. IDCA pg. 8.   This misrepresentation was made by the Enterprise in writing, in the IDCA. This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made this misrepresentation, they had no intention to use Chun's money in this way. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired the Initial Investment to Anderson-Clarke, as further specified below.

70.     On February 2, 2011, the Enterprise, and specifically Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that they would establish "lines of credits" that were "based on the lease of a financial instrument using the [Initial Investment] to have a value of no less than $200,000,000."

13

Chun v. Americana et al.

[sic]. IDCA pg. 8.   This misrepresentation was made by the Enterprise in writing, in the IDCA.  This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made this misrepresentation, they had no intention to use Chun's money in this way. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired the Initial Investment to Anderson-Clarke, as further specified below.

71.     On February 2, 2011, the Enterprise, through Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that they would ensure that the "Loan to Value" of the $200,000,000 SPIV was "Thirty Percent of the Face Value or $60,0000,000." IDCA pg. 10.   According to the Enterprise, and specifically, Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman  the "Loan to Value" was the basis for periodic calculations of the Return on Investment ("ROI") owed to Chun under the IDCA.  This misrepresentation was made by the Enterprise in writing, in the IDCA.  This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made this misrepresentation, they had no intention to use Chun's Initial Investment in this way. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

14

Chun v. Americana et al.

72.     On February 2, 2011, the Enterprise, through Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that the minimum gross return on investment for Chun would be roughly 36 million per month IDCA pg. 10. This misrepresentation was made by the Enterprise in writing, in the IDCA.  This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made this misrepresentation, they had no intention of using Chun's Investment to generate such a return for Chun. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

73.     On February 2, 2011, the Enterprise, through Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that Chun would be paid 95% of the gross return on investment, in at least monthly installments to Chun. IDCA pg. 10.     This misrepresentation was made by the Enterprise in writing, in the IDCA.  This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made this misrepresentation, they had no intention to use Chun's Initial Investment in this way. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

15

Chun v. Americana et al.

74.     On February 2, 2011, the Enterprise, and specifically Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman misrepresented that:

    (a)  the SPIV would invest in "risk free or maximally up to level 2 in risk profiling"; IDCA pg. 8.

    (b)  the transaction would abide by all local government authorities and regulations; IDCA pg. 7.

    (c)  Americana CO guaranteed the protection of the Chun's Initial Investment; IDCA pg. 10.  and

    (d)  the Enterprise would return Chun's Initial Investment. IDCA pg. 10.

75.     These misrepresentations were made by the Enterprise in writing, in the IDCA.  These misrepresentations were made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise made these misrepresentations, they knew the misrepresentations were false and had no intention of using Chun's Initial Investment in this way, no intention of abiding by any governmental rules or regulations, no intention of guaranteeing Chun's Initial Investment, and no intention of returning Chun's Initial Investment. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

Chun v. Americana et al.

**Anderson-Clarke Facilitates the Fraud Acting as an Escrow Agent**

76.     On or around February 1, 2011, before making any investment with the Enterprise, Chun expressed his skepticism about the security of the investment offered by the Enterprise under the IDCA.

77.     On or around February 1, 2011, in order to further induce Chun into tendering the funds,  the Enterprise, through Lanni, Muro and Bregman, pacified Chun's concerns by suggesting the involvement of Anderson-Clarke, a barrister, solicitor and notary public licensed in Ontario, Canada.

78.     On or around February 1, 2011, the Enterprise, through Bregman misrepresented that Anderson-Clarke would act as a "third party escrow agent" who would ensure the safe custody of Chun's Initial Investment.  This misrepresentation was made for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When Bregman made this misrepresentation, he knew the misrepresentation was false and knew that Anderson-Clarke would not guarantee Chun's Initial Investment in this way. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

79.     Chun believed in good faith that Anderson-Clarke's involvement legitimized and confirmed the investment opportunity because notaries public are among the most well-regarded and respected attorneys in Malaysia.

17

Chun v. Americana et al.

80.     On February 3, 2011, Chun sent an email to Bregman requesting that the proposed escrow agreement between Americana CO, Anderson-Clarke, and Chun be modified to require that Anderson-Clarke guarantee the safe custody and return of Chun's Initial Investment within 180 days.  This email is attached hereto and incorporated herein as Exhibit C.

81.     On or around February 4, 2011, the Enterprise, through Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman, conspiring to acquire Chun's funds, finally induced Chun to execute the IDCA with Americana CO. *See*, Exhibit A.

82.     When Chun executed the IDCA, Chun relied on all of the misrepresentations made by the Enterprise.

83.     When Chun executed the IDCA, Chun also relied on Anderson-Clarke's involvement in the transaction as the alleged "escrow agent" and notary.

84.     Sometime in early February, 2011, the Enterprise, through Lanni, Muro, Americana CO, Anderson-Clarke, Anderson-Clarke Law, and Bregman provided Chun with an escrow agreement.  This escrow agreement was provided for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When the Enterprise provided the escrow agreement they never had any intention of complying or abiding by it, or of holding Chun's Initial Investment "in escrow". In fact, using the phones, email, wires or other instrumentalities of interstate commerce, the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

18

Chun v. Americana et al.

85.     On February 9, 2011, Chun, Americana CO, and Anderson-Clarke entered into this escrow agreement (the "Escrow Agreement") wherein Anderson-Clarke agreed to serve as an "escrow agent" for the transaction.  The Escrow Agreement is attached hereto and incorporated herein as Exhibit D.

86.     In the Escrow Agreement Anderson-Clarke misrepresented that:

    a)  Anderson-Clarke, would abide by the terms and conditions contained in the IDCA, including specific requirements regarding the use of the Initial Investment;

    b)  that Anderson-Clarke, would " place the [Initial Investment] into secured investments and to do all things necessary pursuant to the IDCA, including…execute documents, deposit, transfer and disburse funding in accordance to the provisions, terms and conditions contained therein. . . ."

    c)  that Anderson-Clarke would  actively effect transfers into "secured investments,"; and

    d)  that Anderson-Clarke would maintain at least $1,000,000.00 United States Dollars ("USD") in the escrow account, less any accrued escrow agent fees.

87.     Anderson-Clarke made the above  misrepresentations to Chun for the purpose of inducing Chun to wire the Initial Investment to the Enterprise. When Anderson-Clarke executed the escrow agreement she never had any intention of complying or abiding by it, or of holding Chun's Initial Investment "in escrow". In fact, using the phones, email, wires or other instrumentalities of interstate commerce, Anderson-Clarke and the rest of the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

19

Chun v. Americana et al.

88.     On February 8, 2011, Anderson-Clarke sent Chun an email with

Anderson-Clarke's wiring instructions (the "Wiring Instructions"). A copy of the email

and Wiring Instructions are attached hereto and incorporated herein as Exhibit E.

89.     The Wiring Instructions identified Anderson-Clarke's bank account

("Anderson-Clarke's Account") as follows:

| BANK: | TD CANADA-TRUST (Toronto-Dominion Bank) |
|---|---|
| BANK CODE: | 004 |
| TRANSIT: | 10452 |
| ACCOUNT NUMBER: | xxxxx-xxx5088 |
| ACCOUNT NAME: | Margaret Anderson-Clarke-Escrow Account |
| SWIFT CODE: | TDOMCATTTOR |
| ABA/ROUTING CODE: | 026009593 |
| BANK BRANCH ADDRESS: | 11730 Yonge Street, Richmond Hill Ontario, CANADA L4E 3N6 |
| BANK BRANCH MANAGER: | Ms. Jean Derewlawny |
| TELEPHONE: | (905) 770-0227 x 250 |
| FACSIMILE: | (905)-770-8393 |
| LAW FIRM ADDRESS: | 39 Richvalley Crescent Richmond Hill Ontario, L4E 4C9 |
| LAW FIRM TELEPHONE: | 905-883-6416 |
| LAW FIRM FACSIMILE: | 905-883-6362 |

90.     This is not the only time that Anderson-Clarke and Anderson-Clarke Law

have provided escrow services to the Enterprise. Anderson-Clarke has purposefully

availed herself of the laws of the United States by regularly providing escrow services

to Americana CO.

91.     On February 14, 2011, Chun and the Enterprise, through Americana CO,

Anderson-Clarke, and Anderson-Clarke Law, amended the Escrow Agreement (the

Chun v. Americana et al.

"Amendment"). The Amendment to the Escrow Agreement is attached hereto and incorporated herein as Exhibit F.

92.     The Amendment required that the Initial Investment be returned to Chun by either Americana CO or Anderson-Clarke within 180 days. When Anderson-Clarke executed the Amendment, she did so for the purpose of inducing Chun to wire the Initial Investment to the Enterprise.  Anderson-Clarke never had any intention of returning Chun's Initial Investment within 180 days. In fact, using the phones, email, wires or other instrumentalities of interstate commerce, Anderson-Clarke and the rest of the Enterprise agreed to fraudulently transfer the Initial Investment to the transferee defendants soon after Chun had wired his Initial Investment to Anderson-Clarke, as further specified below.

93.      On or around February 25, 2011, in reliance on all of the above misrepresentations and predicate acts of the Enterprise, acting in concert, Chun wired the Initial Investment from his account at HSBC Bank Malaysia Berhad to Anderson-Clarke's Account.  Chun's remittance form showing his request to wire the Initial Investment to Anderson-Clarke's Account is attached hereto and incorporated herein as Exhibit G.

94.     On or around February 25, 2011, the Enterprise, through Anderson-Clarke received the transfer of the Initial Investment into the Anderson-Clarke's Account.

95.     On February 26, 2011, Anderson-Clarke emailed Chun an Acknowledgement and Confirmation Re: Receipt of Investment Funds Into Escrow Under IDCA (the "Acknowledgment"). The Acknowledgement confirmed that Chun

21

had wired his Initial Investment to the account number provided by Anderson-Clarke.

A copy of the email and Acknowledgment are attached hereto and incorporated herein

as Exhibit H.

## Breaches of the Escrow Agreement and IDCA

96.     On or around February 25, 2011, upon receipt of Chun's Initial Investment

of $1,000,000 USD, Anderson-Clarke immediately breached the IDCA and Escrow

Agreement by converting the Initial Investment into $979,490.21 Canadian Dollars

("CAN").

97.     According to the Bank of Canada, the published exchange rate was 0.9809

USD to 1 CAN for February 25, 2011, the date that the Initial Investment was

transferred. Under the then-current exchange rate, the Initial Investment should have

amounted to $980,900 CAN, not the $979,490.21CAN as reported by Anderson-Clarke.

98.     Anderson-Clarke's unauthorized conversion to CAN resulted in a loss in

value of approximately $1,437.24 USD and reduced the amount of funds held in the

Escrow Account below the required $1,000,000 USD.  This discrepancy was not

attributed to accrued Escrow Agent fees and was otherwise unaccounted for.

99.     On or about February 28, 2011, Chun sent Anderson-Clarke an email

inquiring why his Initial Investment was converted into CAN. A copy of this email is

attached hereto and incorporated herein as Exhibit I.

100.     On or about March 1, 2011, the Enterprise, through Bregman, sent an

email stating that Bregman spoke with Lanni and confirmed that the Initial Investment

Chun v. Americana et al.

would be processed as $1,000,000 USD, "regardless of what Margaret informed Chun. . .
." A copy of this email is attached hereto and incorporated herein as Exhibit J.

### The Fraudulent Transfers

101.     Sometime soon after Chun wired the Initial Investment to Anderson-
Clarke and Anderson-Clarke Law, Americana CO, Lanni, Muro, West, West Law,
Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited,
Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, all conspired to facilitate the
transfer  of the vast majority of the Initial Investment funds from Anderson-Clarke
Law's bank account to the following recipients:

    a)  to Tri-Globe Capital Limited in an amount of $48,992.96;

    b)  to West Law in an amount of $782,560.00;

    c)  to Sayse Chatterpaul in an amount of $15,000.00;

    d)  to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

    e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

    f)  to Sayse Chatterpaul in an amount of $15,000.00;

    g)  to Sayse Chatterpaul in an amount of $5,000.00;

    h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

    i)  to Anand Chatterpaul in an amount of $16,000.00.

    (the parties identified above are referred to collectively as the "Transferees")

102.     On information and belief, the above Transferees agreed to provide and
actually provided wire instructions to Americana CO, Lanni, Muro, Bregman, West,

Chun v. Americana et al.

West Law, Anderson-Clarke, Anderson-Clarke Law for the purposes of converting the Initial Investment and defrauding Chun.

103.     The Transferees received and accepted the funds derived directly from the Initial Investment.

104.     The above referenced transfers were done by the Enterprise's agreement and design.

105.     None of the Transferees used the Initial Investment funds "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," or for the purposes of "leasing" a "financial instrument" as required by the IDCA and Escrow Agreement.

106.     None of the Transferees used the Initial Investment funds to invest in "secured investments" as the Enterprise originally represented to Chun.

107.     The Enterprise, and particularly, Anderson-Clarke and Anderson-Clarke Law, Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, failed to transfer the Initial Investment into "secured investments" as they previously represented.

108.     The Enterprise, and particularly, Anderson-Clarke and Anderson-Clarke Law, Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, failed to use the Initial Investment for "secured

24

Chun v. Americana et al.

investments," failed to form a SPIV, failed to "lease" a "financial instrument" and failed

to otherwise use the Initial Investment as they had previously represented.

109.    The Enterprise, and particularly, West, West Law, Bregman, Americana

CO, Lanni, Muro, Anderson-Clarke, and Anderson-Clarke Law failed to return Chun's

Initial Investment within 180 days as required by the Escrow Agreement, and failed to

pay Chun the amounts specified in the IDCA, as they had previously represented.

110.    The Transferees merely converted all of the Initial Investment funds for

their own personal benefit and gain.

111.    Until recently, Chun was unaware that the vast majority of his Initial

Investment was transferred by the Enterprise to the Transferees.

**Chun's Futile Pursuit of the Return of the Initial Investment**

112.    Since April 2011, through the present, Chun diligently attempted to obtain

remittance of his Initial Investment and the additional returns owed to him under the

IDCA and Escrow Agreement.

113.    Since their initial breaches of the Escrow Agreement and IDCA, the

Enterprise and particularly Americana CO, Lanni, Muro, Bregman, Brown, West, and

Anderson-Clarke have engaged in tactics to mislead Chun, continuously alleging that

Americana CO would eventually repay Chun's Initial Investment with profits, though

they never intended to *actually* repay him, merely delay his pursuit.

114.    On or about April 28, 2011, the Enterprise, through Brown, emailed Chun

stating that the return of Chun's Initial Investment had not been processed because of a

"delay imposed due to a scheduled conference being held today with Americana's

25

Chun v. Americana et al.

international financial team." A copy of this email is attached hereto and incorporated herein as Exhibit K.

115.    On June 6, 2011, Chun contacted Bregman and Lanni to determine why Americana CO failed to pay Chun as required by the IDCA.  A copy of this email is attached hereto and incorporated herein as Exhibit L.

116.    On information and belief, on June 7, 2011, the Enterprise, and specifically West and West Law formed Dreamworks/Americana Investments, LLC in Virginia. On information and belief, Dreamworks/Americana Investments, LLC was formed for the purposes of defrauding victims of their funds.

117.    On or about June 8, 2011, the Enterprise, through Lanni, responded to Chun via SMS messages and email stating that Americana CO would send Chun the payments he was owed. Lanni stated that the amounts owed to Chun would be wired from the Bank of Nova Scotia with "reference number 4415156136."  A copy of this email is attached hereto and incorporated herein as Exhibit M.

118.    Chun tried to use the reference number provided by Lanni, but Chun and/or the Bank of Nova Scotia could not confirm or locate any funds sent by Lanni through Americana CO to Chun using that reference number.

119.    On information and belief, no funds were ever wired by the Enterprise, Lanni or Americana CO to the Bank of Nova Scotia for the benefit of Chun.

120.    Later in June 2011, the Enterprise, through Lanni, misrepresented that the Enterprise was willing to return the Initial Investment and make an additional one-time payment of $10,000,000 to Chun to settle Chun's dispute with the Enterprise.

Chun v. Americana et al.

121.     On or about June 21, 2011, the Enterprise, through Lanni, emailed Chun and Anderson-Clarke, instructing Anderson-Clarke to "release and return the [Initial] Investment sum," to Chun.  A copy of this email is attached hereto and incorporated herein as Exhibit N.   When the Enterprise represented that it was facilitating the release of Chun's Initial Investment, it had no intention of doing so.  In fact, Chun's Initial Investment of one million dollars had already been transferred by the Enterprise to the Transferees.

122.     Anderson-Clarke did not release and return Chun's Initial Investment sum to him, likely because the funds had already been dispersed to the Transferees.

**Anderson-Clarke's Further Deceptive Acts:**
**The Alleged Remittance of the Initial Investment to Chun**

123.     On July 4, 2011, Chun's Malaysian law firm, Feei, Feisal & Partners ("Feei Feisal"), emailed Anderson-Clarke demanding remittance of the Initial Investment.  A copy of this email is attached hereto and incorporated herein as Exhibit O.

124.     On August 3, 2011, the Enterprise, through Anderson-Clarke,  sent Feei Feisal an email stating that a remittance of the Initial Investment had been wired to Chun and also that Anderson-Clarke anticipated "being in a position, likely by late tomorrow, to provide you with confirmation of transmission for tracing purposes. . . ." A copy of this email is attached hereto and incorporated herein as Exhibit P.

125.     On or about August 5, 2011, the Enterprise, through Anderson-Clarke, sent Feei Feisal an email stating as follows:

> We are now in a position to and wish to herewith confirm that at our direction the escrow funds in this matter are on route to the account your

27

Chun v. Americana et al.

> client mandated to our representatives and that the corresponding sending bank for the transaction is The Royal Bank of Scotland Group Singapore.

A copy of this email is attached hereto and incorporated herein as Exhibit Q.

126.    On or about August 9, 2011, Feei Feisal requested a confirmation number from Anderson-Clarke for the above referenced transfer.

127.    On or about August 10, 2011, the Enterprise, through Anderson-Clarke sent Feei Feisal an email that did not provide a confirmation number, but rather alleged that the funds had been transferred to the "international wire department of [Chun's] domestic bank," but had not yet released due to Chun's failure to provide "critical data." A copy of this email is attached hereto and incorporated herein as Exhibit R.

128.    On or around August 17, 2011, Anderson-Clarke sent another email stating as follows:

> As a result of your client's advice as to urgency, and as part of our ongoing efforts as the independent escrow agent in this matter, to assist your client in the return process, which should virtually be now complete, we have obtained and are including herewith a confirmation number generated by the corresponding sending bank The Royal Bank of Scotland Group with regard to the wire of funds to the account designated and mandated by your client in answer to requests for same by our representatives:
>
> Ref. Number: 567856542505
>
> Please have your client and his financial advisors utilize this reference number, as provided to us by way of our representatives from The Royal Bank of Scotland Group so as to follow up in connection with the funds return process that we have overseen, and then advise us accordingly, in due course.

Chun v. Americana et al.

A copy of this email is attached hereto and incorporated herein as Exhibit S.

129.   Chun tried to use the confirmation number provided by Anderson-Clarke, but the Royal Bank of Scotland could not confirm or locate any funds sent by Anderson-Clarke, Lanni, Muro, or Americana CO using that reference number.

130.   The Royal Bank of Scotland Singapore then requested additional information directly from Anderson-Clarke to attempt to locate the alleged transfer. Anderson-Clarke did not respond to those requests.

131.   No funds were ever wired by the Enterprise,  Anderson-Clarke, Lanni, Muro, or Americana CO, to the Royal Bank of Scotland for the benefit of Chun.

132.   Through September of 2011, Chun and his lawyers at Feei Feisal continued to demand that the Enterprise return the Initial Investment.

133.   On or about September 8, 2011, the Enterprise, through Anderson-Clarke responded to these demands, stating that she believed that Chun "had been regularly updated by his contacts at the Americana Investments firm."  A copy of this email is attached hereto and incorporated herein as Exhibit T.

134.   On or about September 9, 2011, Feei Feisal denied that Chun had been updated as to the status of the allegedly pending refund of the Initial Investment. A copy of this email is attached hereto and incorporated herein as Exhibit U.

135.   On September 26, 2011, Chun submitted a complaint against Anderson-Clarke to the Upper Law Society of Canada (the Ontario bar association regulating attorney conduct) regarding Anderson-Clarke's breach of fiduciary duties owed to the

Chun v. Americana et al.

parties and related ethical offenses (the "Anderson-Clarke Complaint"). A copy of the

Anderson-Clarke Complaint is attached hereto and incorporated herein as Exhibit V.

### Second Attempt at Settlement with Americana CO

136.    On April 2, 2012, the Enterprise, through Americana CO, and Chun

executed a second settlement agreement (the "Second Settlement Agreement"). The

Second Settlement Agreement is attached hereto and incorporated herein as Exhibit W.

137.    The Second Settlement Agreement provided that Americana CO would

cause West Law, the law firm controlled by West, to immediately wire both the Initial

Investment and $5,000,000, to Chun's bank account at HSBC Bank Malaysia Berhad.

138.    On May 7, 2012, Chun sent an email to Americana CO to inquire as to the

whereabouts of the funds.

139.    On May 7, 2012, the Enterprise, through Lanni, responded to Chun's email

promising that Chun would receive the agreed upon amounts within the week. A copy

of this email is attached hereto and incorporated herein as Exhibit X.

140.    On or about May 10, 2012, the Enterprise, through Lanni, sent Chun an

email alleging that a wire transfer from HSBC was in process. A copy of this email is

attached hereto and incorporated herein as Exhibit Y.

141.    On or about May 17, 2012, Chun received an email from Mr. Lanni,

forwarded from "Axia Trust". The email's sender indicated that "Axia Trust" allegedly,

"received via HSBC. . . Four Billion United State Dollars". A copy of this email is

attached hereto and incorporated herein as Exhibit Z.

Chun v. Americana et al.

142.    On information and belief, the Enterprise, through Lanni, forwarded the above referenced email from "Axia Trust" to deceive Chun and make him believe that Americana had funds available to pay Chun back.

143.    On May 17, 2012, Lanni emailed West asking if West could falsely represent to Chun:

   a)   that West had received "third party confirmation" from a trust that Americana had funds to pay amounts owed to Chun;

   b)   that such trust would wire funds to Chun; and

   c)   that such trust was receiving funds from HSBC Bank for that purpose.

144.    The email from Lanni to West is attached hereto and incorporated herein as Exhibit AA.  See, page 2 of the attachment.

145.    On or about May 18, 2012, the Enterprise, through West, emailed a letter to Chun (the "West Letter"). In the West Letter, West represented the following:

   a)   that West Law received third party confirmation that Americana had sufficient funds to meet its financial obligations to Chun and other parties;

   b)   that the third party confirmed that it (the third party) would provide trust and payment services for delivery of funds to Chun;

   c)   that the third party was in communication with HSBC Bank, where the funds to pay Chun would be derived from.

   d)   that the third party confirmed that funds would be available to pay Chun within five banking days;

A copy of the West Letter is attached hereto and incorporated herein as Exhibit AB.

146.    On information and belief, West did not receive any true third party confirmation supporting the representations that West made in the West Letter.

31

Chun v. Americana et al.

147.     As a prior transferee of $782,560.00 of Chun's Initial Investment, and as a participant in the Enterprise, West and West Law knew that Americana CO had no intention of paying Chun the amounts Americana CO owed him.

148.     West made the representations in the West Letter knowing that Chun would rely on such representations.

149.     Chun relied on the representations made by West in the West Letter when he decided to forbear and forgo any other collection attempts against Americana CO at that time.

150.     To date, none of the Defendants have paid Chun any money.

**The Colorado Lawsuit**

151.     On July 2, 2013, Chun filed a complaint with the United States District Court, District of Colorado, Civil Action No. 13-cv-01745-REB (the "Colorado Lawsuit").

152.     Americana CO, Anderson-Clarke, Anderson-Clarke Law, West, and West Law Group were Defendants to the Colorado Lawsuit.

153.     On Sept. 3, 2013, Defendant Americana CO filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

154.     Also on Sept. 3, 2013 Defendant West and West Law Group filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

155.     On June 6, 2014, Plaintiff filed a motion for partial summary judgment against Americana CO.

32

Chun v. Americana et al.

156.     On August 21, 2014 the Court dismissed the claims against Defendant West and West Law Group, without prejudice, for a lack of personal jurisdiction over those Defendants.

157.     On August 21, 2014, the Court entered an order for judgment against Americana CO for breach of contract in the amount of $6,000,000 plus prejudgment and post-judgment interest.

158.     Americana CO has not paid Chun anything under the judgment.

159.     On September 9, 2014, the Court, dismissed the claims against Anderson-Clarke and Anderson Clarke Law without prejudice.

160.     On September 10, 2014, the Court entered final judgment as described above.

## Pattern of Criminal Activity Against Other Victims

161.     The Enterprise has engaged in a similar pattern of conduct with other victims spanning several years.

162.     The names of the known other victims are Douglas Neil, Thomas Shaw, and David Gonzalez-Escudero.

### *Douglas Neil*

163.     Using the very same method the Enterprise used against Chun, the Enterprise agreed among themselves to induce, and did induce, Douglas Neil to transfer one million dollars to the Enterprise.  The Enterprise then agreed among

Chun v. Americana et al.

themselves to use lies and deceit to delay, defraud, and deter Douglas Neil's attempts to recover his funds.

164.     The Enterprise misrepresented that Douglas Neil's one million dollars would be used to "lease" a larger "credit instrument," which would, according to the Enterprise, generate large returns for Douglas Neil.  After Douglas Neil transferred his one million dollars to the Enterprise, an specifically to Anderson-Clarke, the Enterprise merely caused the money to be wire transferred to the following parties in the following amounts:

     a)  $150,904.57 to Tri-Globe Capital Limited;

     b)  $496,790.00 to Brogan Capital Ventures;

     c)  $99,390.00 to Sayse Chatterpaul;

     d)  $6,000.00 to Sherry Sankar;

     e)  $10,000.00 to Moureen Schaus;

     f)  $100,040.00 to Sayse Chatterpaul;

     g)  $49,539.02 to Tri-Globe Capital Limited;

     h)  $208,675.00 to West Law;

     i)  $18,000.00 to Sayse Chatterpaul;

     j)  $368.98 to Tri-Globe Capital Limited.

165.     The Enterprise then used lies and deceit to delay Douglas Neil's recovery. The Enterprise feigned a willingness to pay Douglas Neil back.  This involved the regular use of the lawyer West and West Law. With no intention of ever paying, West and the rest of the Enterprise presented Douglas Neil with written assurances that payment would be forthcoming, settlement proposals, and a signed settlement

34

Chun v. Americana et al.

agreement. A letter from West to Douglas Neil (the "Neil Letter") is attached hereto and incorporated herein as Exhibit AC. A settlement agreement drafted and presented by West to Douglas Neil (the "Neil Settlement Agreement") is attached hereto and incorporated herein as Exhibit AD.

166. In the Neil Letter, West misrepresented that, "Americana informs that the [million dollars in] funds are on account and immediately available for payment. Americana's bankers inform that they will issue a wire within 72 banking hours of request." When West made this misrepresentation, and when West presented Douglas Neil with the Neil Settlement Agreement, he knew that the Enterprise had no intentions of ever paying Douglas Neil back. However, West made these representations for the purposes of inducing forbearance on the part of Douglas Neal.

167. The misrepresentations of the Enterprise, and specifically West, caused Douglas Neil to forgo and delay his collection attempts against the Enterprise.

168. To date, Douglas Neil has not been paid any funds by the Enterprise.

### Thomas Smith

169. On or around August 23, 2010, using the very same method the Enterprise used against other victims, the Enterprise agreed among themselves to induce, and did induce, Thomas Smith to transfer one million dollars to the Enterprise. The Enterprise then agreed among themselves to use lies and deceit to delay, defraud, and deter Thomas Smith's attempts to recover his funds.

Chun v. Americana et al.

170.    The Enterprise misrepresented that Thomas Smith's one million dollars would be used to "lease" a larger "credit instrument," which would, according to the Enterprise, generate large returns for Thomas Smith.  After Thomas Smith transferred his one million dollars to the Enterprise, an specifically to Jahde, the Enterprise merely caused the money to be wire transferred to unknown transferees in unknown amounts.

171.    In the same way that the Enterprise used Anderson-Clarke as an alleged "third-party" escrow agent for its dealings with Chun and Douglas Neil, the Enterprise used Jahde as the alleged "third-party" escrow agent in the Enterprise's dealings with Thomas Smith.

### David Gonzalez-Escudero

172.     On information and belief, using the very same method used against other victims the Enterprise agreed among themselves to induce, and did induce, David Gonzalez-Escudero to transfer three  million dollars to the Enterprise.  The Enterprise then agreed among themselves to use lies and deceit to delay, defraud, and deter David Gonzalez-Escudero's attempts to recover his funds.

173.    The Enterprise misrepresented that David Gonzalez-Escudero's three million dollars would be used to "lease" a larger "credit instrument," which would, according to the Enterprise, generate large returns for David Gonzalez-Escudero. After David Gonzalez-Escudero's transferred his three million dollars to the Enterprise, an specifically to Anderson-Clarke, the Enterprise caused $2,565,330 to be wire transferred

36

Chun v. Americana et al.

to West Law, and the rest of David Gonzalez-Escudero's money to be wire transferred

to unknown transferees in unknown amounts.

### FIRST CLAIM FOR RELIEF
### RICO
### (Against all Defendants)

174.    Plaintiff repeats and re-alleges each of the allegations above as if fully set

forth herein.

175.    At all relevant times, Plaintiff Chun was a "person" within the meaning of

RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

176.    At all relevant times, Defendants Americana CO, Americana VA, Lanni,

Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown,

Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe

1 were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

177.    At all relevant times, Americana CO, Americana VA, Lanni, Muro, West,

West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe

Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 formed an

association-in-fact for the purpose of defrauding Chun. This association-in-fact was an

"enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

178.    At all relevant times, this enterprise was engaged in, and its activities

affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §

1962(c).

37

Chun v. Americana et al.

179.    At all relevant times, Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, associated with this enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c). Such racketeering activity included all of the Defendants' agreement to convert, defraud and steal $1,000,000 of Chun's money in the form of the Initial Investment by using email and phone calls, to knowingly misrepresent to Chun that his money would be used to "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," and use for "the lease of a financial instrument" as required by the IDCA and Escrow Agreement.

180.    After engaging in the above conduct, Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, then converted some or all of the Initial Investment when they facilitated transfers to the following recipients:

a)   to Globe Capital Limited in an amount of $48,992.96;

b)   to West Law in an amount of $782,560.00;

c)   to Sayse Chatterpaul in an amount of $15,000.00;

d)   to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

38

e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

f)  to Sayse Chatterpaul in an amount of $15,000.00;

g)  to Sayse Chatterpaul in an amount of $5,000.00;

h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

i)  to Anand Chatterpaul in an amount of $16,000.00;

181.   Chun's investigation is continuing, and additional evidence of conversion may be discovered.

182.   Chun has demanded return of his Initial Investment, but the Defendants have not returned these funds.

183.   Specifically, at all relevant times, Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above.

184.   The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1341 (mail fraud); and 18 U.S.C. § 1343 (wire fraud).  The Enterprise and each member of the Enterprise committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

185.   The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).  The acts alleged were related to each other by virtue of common participants, a

Chun v. Americana et al.

common victim (Chun), a common method of commission, and the common purpose and common result of defrauding Chun of $1,000,000 and enriching the Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Jahde, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, at Chun's expense while concealing the fraudulent activities.

186.    As a result of the violations of 18 U.S.C. § 1962(c), by these Defendants Chun lost the $1,000,000 Initial Investment he "invested" in the fraudulent scheme, an injury directly, foreseeably, and intentionally caused by the racketeering activity alleged herein.

187.    As a result of their misconduct, Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Jahde, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 are liable to Chun for his losses in an amount to be determined at trial.

188.    Pursuant to RICO, 18 U.S.C. § 1964(c), Chun is entitled to recover threefold his damages plus costs and attorneys' fees from Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1.

Chun v. Americana et al.

## SECOND CLAIM FOR RELIEF
## CONVERSION
**(Against Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1)**

189.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

190.    The Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 agreed to convert, defraud and steal $1,000,000 of Chun's money in the form of the Initial Investment.

191.    The aforementioned Defendants did this by misrepresenting that they would use the Initial Investment to "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," and by misrepresenting that they would use the Initial Investment for "the lease of a financial instrument" as required by the IDCA and Escrow Agreement.

192.    When the above named Defendants made the above misrepresentations, they had no present intention to use the Initial Investment funds for those purposes. Instead of Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 converted some or all of the Initial Investment when they facilitated transfers to the following recipients:

> a)  to Tri-Globe Capital Limited in an amount of $48,992.96;
>
> b)  to West Law in an amount of $782,560.00;

41

Chun v. Americana et al.

    c)  to Sayse Chatterpaul in an amount of $15,000.00;

    d)  to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

    e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

    f)  to Sayse Chatterpaul in an amount of $15,000.00;

    g)  to Sayse Chatterpaul in an amount of $5,000.00;

    h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

    i)  to Anand Chatterpaul in an amount of $16,000.00;

193.    Chun's Initial Investment has not been returned within 180 days as required by the Escrow Agreement, nor has Chun been paid any amounts required by the IDCA.

194.    Chun has demanded return of his Initial Investment, but the Defendants have not returned these funds.

195.    As a direct and proximate result of the Defendants' conversion of the Initial Investment, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost profits, costs and attorney's fees for bringing this action, and for other damages to be determined at trial.

### THIRD CLAIM FOR RELIEF
### CONSPIRACY
### (Against All Defendants)

196.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

Chun v. Americana et al.

197.     Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, committed conspiracy when they agreed to commit fraud and agreed to convert Chun's Initial Investment by misrepresenting that they would use the Initial Investment to "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," and by misrepresenting that they would use the Initial Investment for "the lease of a financial instrument" as required by the IDCA and Escrow Agreement.

198.     The Defendants sought Chun as a victim of their scheme and intended to convert his investment and abscond with the proceeds of their fraudulent enterprise.

199.     When the above named Defendants made the above misrepresentations, they had no present intention to use the Initial Investment funds for the purposes that they told Chun. Instead, Defendants Americana, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 converted some or all of the Initial Investment when they facilitated transfers to the following recipients:

    a)  to Tri-Globe Capital Limited in an amount of $48,992.96;

    b)  to West Law in an amount of $782,560.00;

    c)  to Sayse Chatterpaul in an amount of $15,000.00;

    d)  to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

    e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

Chun v. Americana et al.

       f)   to Sayse Chatterpaul in an amount of $15,000.00;

       g)  to Sayse Chatterpaul in an amount of $5,000.00;

       h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

       i)   to Anand Chatterpaul in an amount of $16,000.00;

200.    On information and belief, the above Transferees agreed to provide and provided wire instructions to Americana CO, Lanni, Muro, Anderson-Clarke, Anderson-Clarke Law for the purposes of converting the Initial Investment and defrauding Chun.

201.    Chun's Initial Investment has not been returned within 180 days as required by the Escrow Agreement, nor has Chun been paid any amounts required by the IDCA.

202.    Plaintiff Chun's investigation is continuing, and additional evidence of conversion may be discovered.

203.    Chun has demanded return of his Initial Investment, but the Defendants have not returned these funds.

204.    As a direct and proximate result of the Defendants' conversion of the Initial Investment, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost profits, costs and attorneys fees for bringing this action, and for other damages to be determined at trial.

205.    As a direct and proximate result of the Defendants' conspiracy to defraud and steal from Plaintiff Chun has suffered damages, including but not limited to loss of

Chun v. Americana et al.

the Initial Investment, lost profits, costs and attorneys fees for bringing this action, and

for other damages to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### FRAUD
### (Against Defendant Brian West and West Law)

206.    Plaintiff re-alleges each and every allegation contained in the preceding

paragraphs as if fully set forth herein.

207.    Defendants West and West Law made false representations of material

facts to Chun and Chun's attorneys when West misrepresented:

a)  that Americana CO had a good faith intention to pay Chun;

b)  that West and West Law received third party confirmation that
    Americana CO had sufficient funds to meet its financial obligations
    to Chun and other parties;

c)  that the third party confirmed that it (the third party) would
    provide trust and payment services for delivery of funds to Chun;

d)  that the third party confirmed that it (the third party) was in
    communication with HSBC Bank, where the funds to pay Chun
    would be derived from; and

e)  that the third party confirmed that funds would be available to pay
    Chun within five banking days.

208.    Defendants West and West Law made the above false representations of

material fact in such a way as to induce a reasonable person to believe the

representations to be true.

209.    At the time West and West Law made the above false representations of

material fact, West and West Law knew that the misrepresentations were false, but still

made the false representations of material fact knowingly, with the intention of

45

Chun v. Americana et al.

inducing Chun to forebear and forego any collection efforts against the other

Defendants at that time. As a prior transferee of $782,560.00 of Chun's Initial

Investment, and as a party participating in the Enterprise' fraud, West and West Law

knew that Lanni, Muro, Anderson-Clarke, Anderson-Clarke Law, and Americana CO

had no intention of paying Chun the amounts Americana CO owed him.

210.    Chun relied on Defendant West's false representations of material fact

believing them to be true and, on the basis of those false representations of material fact,

did not pursue any collection attempts against the other Defendants at that time.

211.    Therefore, West's actions and West Law's actions constitute fraud.

212.    As a direct and proximate result of the Defendants West and West Law's

fraudulent misrepresentations, Plaintiff Chun has suffered damages, including but not

limited to loss of the Initial Investment, costs and attorneys fees for bringing this action,

and for other damages to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**CONSTRUCTIVE FRAUD**
**(Against Defendants West and West Law)**

213.    Plaintiff Chun re-alleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

214.    On information and belief, Defendants West and West Law gave false

information to Chun and Chun's attorneys when West misrepresented:

    a)  that Americana CO had a good faith intention to pay Chun;

    b)  that West and West Law received third party confirmation that
        Americana CO had sufficient funds to meet its financial obligations
        to Chun and other parties;

46

Chun v. Americana et al.

c)  that the third party confirmed that it (the third party) would provide trust and payment services for delivery of funds to Chun;

d)  that the third party confirmed that it (the third party) was in communication with HSBC Bank, where the funds to pay Chun would be derived from; and

e)  that the third party confirmed that funds would be available to pay Chun within five banking days.

215.   Defendants West and West Law were negligent in obtaining or communicating the false representations specified above to Chun and his attorneys. As a prior transferee of $782,560.00 of Chun's Initial Investment, and as a party participating in the Enterprise's fraud, West and West Law knew that Americana had no intention of paying Chun the amounts Americana owed him.

216.   Defendants West and West Law gave the false representations specified above to Chun and his attorneys in the course of the practice of law.

217.   Defendants' actions were a breach of an attorney's duty to ensure that statements made to others are truthful.

218.   Defendants West and West Law gave the false representations specified above to Chun and his attorneys with the intent or knowing that Chun and his attorneys would withhold further action in reliance on that information.

219.   Chun and his attorneys relied on the false representations specified above to their detriment by, among other things, forbearing and forgoing any collection action against Americana, Anderson-Clarke, or Anderson-Clarke Law.

220.   As a direct and proximate result of the Defendants actions, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost

47

Chun v. Americana et al.

profits, costs and attorneys fees for bringing this action, and for other damages to be

determined at trial.

**SIXTH CLAIM FOR RELIEF**
**FRAUDULENT TRANSFER UNDER VIRGINIA LAW**
**(Against Defendants Americana CO, West, West Law, Anderson-Clarke Law,**
**Anderson-Clarke, Tri-Globe Capital Limited, Sayse Chatterpaul, John Doe, Anand**
**Chatterpaul)**

221.    Plaintiff Chun re-alleges each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

222.    Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-

Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand

Chatterpaul, and John Doe 1 made the following transfers with the specific intent to

delay, hinder or defraud Chun of the Initial Investment:

a) to Tri-Globe Capital Limited in an amount of $48,992.96;

b) to West Law in an amount of $782,560.00;

c) to Sayse Chatterpaul in an amount of $15,000.00;

d) to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

e) to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

f) to Sayse Chatterpaul in an amount of $15,000.00;

g) to Sayse Chatterpaul in an amount of $5,000.00;

h) to Tri-Globe Capital Limited in an amount of $11,089.75; and

i) to Anand Chatterpaul in an amount of $16,000.00.

Chun v. Americana et al.

223.    Americana CO, Anderson-Clarke, and Anderson-Clarke Law were insolvent at the time of the above referenced transfers, or were rendered insolvent by the above referenced transfers.

WHEREFORE, Plaintiff is entitled a judgment declaring that the above referenced transfers are void pursuant to Virginia Code § 55-80, setting aside such transfers pursuant to Virginia Code § 55-82, and awarding reasonable attorneys' fees and costs, and such other relief as is proper.

### SEVENTH CLAIM FOR RELIEF
### VOLUNTARY CONVEYANCE UNDER VIRGINIA LAW
**(Against Defendants Americana, West, West Law, Anderson-Clarke Law and Anderson-Clarke)**

224.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

225.    Defendants Americana CO, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 made the following transfers of the Initial Investment:

a)  to Tri-Globe Capital Limited in an amount of $48,992.96;

b)  to West Law in an amount of $782,560.00;

c)  to Sayse Chatterpaul in an amount of $15,000.00;

d)  to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

f)  to Sayse Chatterpaul in an amount of $15,000.00;

g)  to Sayse Chatterpaul in an amount of $5,000.00;

Chun v. Americana et al.

      h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

      i)  to Anand Chatterpaul in an amount of $16,000.00.

226.     Americana CO, Anderson-Clarke, and Anderson-Clarke Law were insolvent at the time of the above referenced transfers, or were rendered insolvent by the above referenced transfers.

227.     The above referenced transfers were made for no consideration deemed valuable in law.

228.     The above referenced transfers violate Virginia Code § 55-81 and should be avoided and set aside pursuant to Virginia Code § 55-82.

WHEREFORE, Plaintiff is entitled a judgment declaring that the above referenced transfers are void pursuant to Virginia Code § 55-81, setting aside such transfers pursuant to Virginia Code § 55-82, and awarding reasonable attorneys' fees and costs, and such other relief as is proper.

## EIGHT CLAIM FOR RELIEF
## PIERCING THE CORPORATE VEIL UNDER VIRGINIA LAW
### (Against Defendants Americana CO, Americana VA, Lanni, and Muro)

229.     Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

230.     Americana CO, along with American VA, was the alter ego, alias stooge, or dummy of its shareholders, Defendants Muro and Lanni.

231.     Defendants Muro and Lanni have controlled or used Americana CO to evade a personal obligation, to perpetrate a fraud or a crime, to commit an injustice or to gain an unfair advantage.

Chun v. Americana et al.

232.    Defendants Muro and Lanni used the alter ego Americana CO to defraud, convert, and steal $1,000,000 of Chun's money in the form of the Initial Investment by knowingly misrepresenting to Chun that his money would be used to "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," and use for "the lease of a financial instrument" as required by the IDCA and Escrow Agreement.

233.    Such converted funds were not used to "to establish the suitable lines of credits and/or banking facilities and form a Special Purpose Investment Vehicle ("SPIV")," and were not used for "the lease of a financial instrument" as required by the IDCA and Escrow Agreement. Instead, Defendants Americana CO, Lanni, Muro, with the help of West, West Law, Anderson-Clarke, Anderson-Clarke Law, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1, converted some or all of the Initial Investment when they facilitated transfers to the following recipients:

   a)  to Tri-Globe Capital Limited in an amount of $48,992.96;

   b)  to West Law in an amount of $782,560.00;

   c)  to Sayse Chatterpaul in an amount of $15,000.00;

   d)  to John Doe 1 in an amount of $50,000.00 (having account number XXXX552);

   e)  to John Doe 1 in an amount of $35,000.00 (having account number XXXX552);

   f)  to Sayse Chatterpaul in an amount of $15,000.00;

   g)  to Sayse Chatterpaul in an amount of $5,000.00;

   h)  to Tri-Globe Capital Limited in an amount of $11,089.75; and

   i)  to Anand Chatterpaul in an amount of $16,000.00.

Chun v. Americana et al.

234.    The unity of interest and ownership is such that the separate personalities for Americana CO and Defendants Muro and Lanni either never existed or no longer exist, and to adhere to that separateness would work an injustice.

235.    As a direct and proximate result of Defendants Muro and Lanni's actions, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost profits, costs and attorneys fees for bringing this action, and for other damages to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Against Defendants Anderson-Clarke Law and Anderson-Clarke)**

236.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

237.    Chun, Anderson-Clarke, and Americana CO executed the Escrow Agreement.

238.    Chun upheld his obligations under the Escrow Agreement.

239.    Anderson-Clarke materially breached the Escrow Agreement in the following ways:

a)  by her unauthorized conversion of the Initial Investment into CAN;

b)  by effecting an unexplained exchange-rate discrepancy in regards to the Initial Investment;

c)  by allowing the Initial Investment to fall below the required $1,000,000 USD;

d)  by failing to transfer the Initial Investment into "secured investments";

e)  by failing to form a SPIV; and

52

Chun v. Americana et al.

   f)   by failing to  return Chun's Initial Investment within 180 days as
        required by the Escrow Agreement; and

   g)   by transferring the Initial Investment to Tri-Globe Capital Limited,
        Brogan Capital Ventures, Sayse Chatterpaul, Sherry Sankar,
        Moureen Schaus, and West Law.

240.   The above actions were done by Anderson-Clarke on behalf of herself and

in her official capacity as a principal of Anderson-Clarke Law

241.   As a direct and proximate result of the Defendants' breaches of the

Escrow Agreement, Plaintiff Chun has suffered damages, including but not limited to

loss of the Initial Investment, lost profits, costs and attorneys fees for bringing this

action, and for other damages to be determined at trial.

## TENTH CLAIM FOR RELIEF
### NEGLIGENCE
**(Against Defendant Anderson-Clarke and Anderson-Clarke Law)**

242.   Plaintiffs re-allege each and every allegation contained in the preceding

paragraphs as if fully set forth herein.

243.   Defendants Anderson-Clarke and Anderson-Clarke Law engaged in

negligent conduct when Anderson-Clarke:

   a)    did not meet her duty of care as an escrow agent;

   b)   converted the Initial Investment into CAN without permission or
        authority;

   c)   effected an unexplained exchange-rate discrepancy in regards to
        the Initial Investment;

   d)   allowed the Initial Investment to fall below the required $1,000,000
        USD;

   e)   failed to conduct sufficient due diligence to assess whether the
        IDCA transaction with Americana was lawful or valid;

53

Chun v. Americana et al.

    f)  carelessly authorized transfer of Chun's funds to Americana CO, without ensuring any compliance with the Escrow Agreement and without ensuring any compliance with the IDCA;

    g)  confirmed in writing that a remittance of the Initial Investment was on route to Chun's account from the Royal Bank of Scotland Group, when such funds were not actually on route;

    h)  stated, in writing, that the Initial Investment was held by Chun's bank for his benefit, when such funds had not yet been sent; and

    i)  provided falsified reference numbers to Chun and his attorneys.

244.    As a direct and proximate result of the Defendants' actions, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost profits, costs and attorneys fees for bringing this action, and for other damages to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
**(Against Defendants Anderson-Clarke and Anderson-Clarke Law)**

245.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

246.    Defendants Margaret Anderson-Clarke and Anderson-Clarke Law gave false information to Chun and Chun's attorneys when Anderson-Clarke:

    a)  confirmed in writing that a remittance of the Initial Investment was on route to Chun's account from the Royal Bank of Scotland Group, when such funds were not actually on route;

    b)  stated, in writing, that the Initial Investment was held by Chun's bank for his benefit, when such funds had not yet been sent; and

    c)  provided falsified reference numbers to Chun and his attorneys.

Chun v. Americana et al.

247.    Defendants gave the aforementioned false information to Chun in the course of Anderson-Clarke's practice as a lawyer and escrow agent.

248.    Defendants were negligent in obtaining or communicating the aforementioned false information to Chun and his attorneys.

249.    Defendants gave the information to Chun and his attorneys with the intent or knowing that Chun and his attorneys would withhold further action in reliance on that information.

250.    Chun and his attorneys relied on the false information to their detriment by, among other things, forbearing and forgoing any collection action against Americana CO, Lanni, Muro, Anderson-Clarke Law, or Anderson-Clarke at that time.

251.    Chun's reliance on the false information caused Chun to suffer damages, costs, and attorneys fees for bringing this action, and for other damages to be determined at trial.

## TWELFTH CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTIES
### (Against Defendant Anderson-Clarke and Anderson-Clarke Law)

252.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

253.    Defendants Anderson-Clarke and Anderson-Clarke Law served in the role of escrow agent under the Escrow Agreement as part of the IDCA.

Chun v. Americana et al.

254.    In that role, Anderson-Clarke and Anderson-Clarke Law occupied a position of trust, resulting in a fiduciary relationship and fiduciary duties owed to Chun.

255.    Anderson-Clarke and Anderson-Clark Law violated their duty of loyalty and/or other fiduciary duties owed to Chun when Anderson-Clarke:

    a)  converted the Initial Investment into CAN without permission or authority;

    b)  effected an unexplained exchange-rate discrepancy in regards to the Initial Investment;

    c)  allowed the Initial Investment to fall below the required $1,000,000 USD;

    d)  failed to conduct sufficient due diligence to assess whether the IDCA transaction with Americana CO was lawful or valid;

    e)  carelessly authorized transfer of Chun's funds to Americana CO, without ensuring any compliance with the Escrow Agreement and without ensuring any compliance with the IDCA; and

    f)  confirmed in writing that a remittance of the Initial Investment was on route to Chun's account from the Royal Bank of Scotland Group, when such funds were not actually on route;

    g)  stated, in writing, that the Initial Investment was held by Chun's bank for his benefit, when such funds had not yet been sent; and

    h)  provided falsified reference numbers to Chun and his attorneys.

256.    As a direct and proximate result of the Defendants actions, Plaintiff Chun has suffered damages, including but not limited to loss of the Initial Investment, lost profits, costs and attorneys fees for bringing this action, and for other damages to be determined at trial.

Chun v. Americana et al.

## THIRTEENTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (Against All Defendants)

257.    Plaintiff Chun re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

258.    At Plaintiff Chun's loss, one or more of Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1have retained a substantial benefit of the Initial Investment of $1,000,000. To allow the Defendants to retain the benefit of the Initial Investment, to the detriment of Chun would be unjust.

259.    In order to prevent unjust enrichment, Plaintiff is entitled to an order requiring Defendants Americana CO, Americana VA, Lanni, Muro, West, West Law, Anderson-Clarke, Anderson-Clarke Law, Bregman, Brown, Jahde, Tri-Globe Capital Limited, Sayse Chatterpaul, Anand Chatterpaul, and John Doe 1 to remit the Initial Investment to Plaintiff, along with interest, attorneys' fees, costs and other damages as determined at trial.

**WHEREFORE**, Plaintiff Chun prays for the following relief:

A.  Joint and several judgments against all Defendants in the amount of Plaintiffs' damages as determined at trial.

B.  An order requiring Defendants to remit Plaintiff's funds, including, but not limited to the Initial Investment.

C.  Treble damages plus costs and attorneys' fees against all Defendants

57

Chun v. Americana et al.

pursuant to RICO, 18 U.S.C. § 1964(c).

D. Interest, costs, and attorney fees incurred by Plaintiff.

E. A preliminary injunction freezing various bank accounts held by the Defendants, if Plaintiff makes a motion to that effect with the appropriate showing to the Court.

F. Any other relief this Court may deem just and equitable.

Chun v. Americana et al.

## <u>JURY DEMAND</u>
## PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated: January 6, 2014

                                      Respectfully submitted,

                                      S & R Law Firm, PLLC

                                      <u>*s/ Benjamin J. Schaefer*</u>
                                      Benjamin J. Schaefer
                                      Virginia Bar Id: 80895
                                      S & R Law Firm, PLLC
                                      4031 Chain Bridge Rd, Suite 103
                                      Fairfax, VA 22030
                                      (703) 273-6431
                                      ben@novadefenders.com

Chun v. Americana et al.

### CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.

I hereby certify that I will hand-deliver and mail the document by U.S. mail to the following non-filing users:

Brian D. West
8500 Leesburg Pike, Suite 400
McLean, VA 22102

and

The West Law Group, PC
8500 Leesburg Pike, Suite 400
McLean, VA 22102


*s/ Benjamin J. Schaefer*
Benjamin Schaefer, Esq.
Virginia bar number 80895
Attorney for Chun Chee Seng
S&R Law Firm, PLLC
4031 Chain Bridge Road, Suite 103
Fairfax, VA 22030
Phone: 703-273-6431
Fax: 703-273-6487
ben@novadefenders.com